We'll hear counsel in U.S. v. Odiace. Thank you, go ahead, Mr. Cohen. May it please the court, my name is Irving Cohen and I represented and continue to represent Ms. Odiace, appointed in the court below and in this court. While there are many meritorious arguments that we've raised, but with the time constraints, we'll focus on two discreet ones. They are, one, the transfer of the funds from one account to another was insufficient to establish money laundering. And the second issue we want to discuss is the issue of burden shifting. With respect to the transfer of the funds, $50,000 was transferred by my client from one bank account to the other. As it turned out, that $50,000 was the product of a scheme that her son had arranged. And all she did with the $50,000 was move it from one of her bank accounts to another bank account. The mere transfer of that money could never have been an attempt to conceal its provenance. It was in her name. It stayed in her name. Nothing was hidden about it. Nothing hid the source or the location or the ownership of that money. If it was to hide the fact that it was criminal proceeds, well, interestingly and critically, it is really irrelevant whether at the time of the transfer she knew or did not know the source of the funds. Nothing else happened to that money. So whether she knew the source of the funds or didn't know the source of the funds and, of course, the jury acquitted her of the fraud in this case, there was nothing else happened to those funds that would satisfy the statute, the money laundering statute, because nothing she did, nothing happened to that money that would conceal in any way anything about that money. The only evidence in the case with respect to that money was the receipt and the transfer of those funds. She didn't withdraw any of that money, either before or after, or write checks against it. There was nothing to suggest, let alone establish beyond a reasonable doubt, that Ms. Odiasi knew of the transaction's obfuscatory purpose as required on the Second Circuit law in U.S. v. Mara, and there's nothing to suggest, let alone establish beyond a reasonable doubt, that the purpose of the transfer, that transaction was, as this Court wrote in U.S. v. Suezo, quote, to conceal or disguise a specific attribute of the funds. Indeed, if she were trying to conceal anything, the last thing she would do would be to keep the funds in her own name and to have created bank documentations of that very move. Her transfer of that funds from one account to her other account in her name did nothing to conceal it. In fact, it made it easier to follow. Mr. Cohen, if you're correct about that, that would overturn count three? It would overturn the one which I'm trying to remember which count. Count three, as I read it, is the count that charges a 1956 A1B little Roman I violation. That's the concealment, isn't it? That's the concealment, yes, exactly. But then count four is just engaging in a monetary transaction in property derived from specific unlawful activity in violation of 1957. That doesn't have a concealment requirement, does it? But it's still part of the money-laundering statute. It would require some, some. No, it's a specific statute that has specific elements. And I thought that 1957 is simply engaging in a financial transaction with dirty money. It's like you buy a car with what you stole. Oh, I'm sorry, now I understand Your Honor's questions. Sorry, Judge. The jury acquitted her of any, of any of the fraud. So this isn't the fraud. This is 1957 count four of the indictment, one of the money-laundering counts. I believe she was convicted of that. Well, perhaps we didn't argue it, argue it when we should have, as far as that particular count is concerned, and I appreciate what Your Honor was saying. The jury determined, did not determine that she was guilty of the fraud. Therefore, the mere transfer of money from one account to the other. Excuse me. I understand that she was acquitted of the wire fraud charges or the conspiracy to wire fraud, whatever it was. But I, I thought, and maybe I'm mistaken, I believe, I thought that she was convicted of all of the so-called, quote, money-laundering counts, one of which was a 1957 violation. And I guess what I'm asking is whether the argument that you are making now about concealment is an argument that is specific to one of those counts, the 1956 charge, or that it somehow is applicable to the other charge as well. Well, what Your Honor is suggesting, that the mere transfer of the funds which as a matter of fact turned out to be the proceeds of a fraud would be sufficient. And I disagree with that. I think you have to have some knowledge of the underlying fraud to be guilty of that. It has to be knowledge that it is from some illegal source. Exactly. Not necessarily from any specific kind of illegality. Exactly. And the jury determined or did not determine that she was guilty. Therefore, you can't impute knowledge that there was some unlawful activity. Please, excuse me. Why do you say the jury found that she did not have knowledge? Was not the jury properly instructed, as it should have been under 1957, that one of the elements is knowledge that the money came from some illegal source, not necessarily from fraud, not necessarily from this particular scheme, which would be necessary to convict her of participation in the scheme, but simply from some illegal source? I agree with Your Honor. I agree wholeheartedly that they would have to find that those proceeds, under that count, those proceeds were the product of some kind of unlawful activity. And I'm saying to Your Honor that the proof was insufficient to establish that. And the fact that the jury found her not guilty is some indication of that. That's different than the concealment issue that you were just raising. Now you're saying it's not just a question of was this particular transaction sufficient to establish a violation that requires an intent to conceal the source of the money. Now you're saying that there was also insufficient evidence to establish that she knew that this was dirty money of some kind. Well, we implicitly made that argument that maybe it wasn't clear from the briefs. Well, we implicitly made that argument that there was insufficient evidence to support the fraud. Therefore, how could she be convicted of that, of the mere transfer, without knowing that it came from some kind of a legal source? That's what I'm saying. Ms. Odiasi simply took the money out of one of her pockets or one of her drawers and put it into one of her other pockets and one of her other drawers. It just — it's really irrelevant whether she actually knew anything at all about the source of the funds. The mere moving of it did not satisfy at least those two out of the three counts, as Your Honor pointed out. This was not a regular banking account of hers, was it? I'm sorry, Judge? This was not a regular banking account of hers, was it? No. She had two bank accounts at that particular time that the money was put into one account, and the next day she put the money into one of her other accounts. Did the evidence show she had used the first account for anything other than this deposit? The evidence did not show specifically that she had used that account. That's correct. Not even generally. It didn't show it at all, did it? I don't believe so, but I believe she had some funds in that account, as I recall. You believe — does the evidence show it? I'm trying to remember that. My crack associate may have that answer for you. But I still think it's irrelevant. The fact of the matter is, as far as the counts that require concealment or hiding, that she didn't conceal or hide anything. It went from her name to her name. As I said, it's like she took money out of one pocket and put it into the other. If she was trying to conceal it, she would have taken money out, she would have sent it somewhere else, she would have done something. But the mere moving of that money from one account to the other doesn't show — is the opposite of concealment. Now, I only have a few minutes left, so I'd like to go on to my other issue, if I may. And that is the issue of burden shifting. During the interview that Ms. Odiasi had with the detectives, they told her she was lying. They told her that they don't believe that she had — that they believe that she thought the money had come from the proceeds of the sale of her merchandise from her 99-cent store that was shipped to Africa. And the interview made a big point out of showing that they didn't believe her. And then they put the onus on her when she had no — there's no requirement at all for her to prove, in fact, anything. And then after that, when we get to trial, the government then puts the onus on her as well to prove, in fact, that the money came — that she believed that the money came from a legitimate source. And this was despite the judge reiterating that the defendant has no burden of proof. But you can't unring the bell. At the very same time that we objected to the introduction of those statements that — of the — when she was asked during the interview, well, do you have any documentation, do you have any records, do you have anything at all, and she said — she answered the questions, all right, then the government piggybacked on that and argued to the jury, in fact, in their closing argument, that that's an indication of her guilt. Interestingly enough, proof at the — there was proof at the trial that was brought out on the defense case that, in fact, she had shipped the merchandise, because the person who picked up the merchandise for shipment to Africa testified at the trial. She never had any burden at all, and yet the jury was now led — given the impression that she was required to come forward with evidence to prove her innocence. And the judge's instructions to the jury on several occasions just did not in any way ameliorate the effect of that charge. If there's any other questions. Kennedy. Of that charge, you don't — you mean of the government's argument to her. You don't really mean of — that the charge needed amelioration, do you? I'm — You said it didn't ameliorate the charge, and I'm suggesting you don't mean that. I'm sorry. No. I mean, if the charge didn't ameliorate the effect of the government's argument to the jury, that's — sorry. Thank you, Mr. Cohen. Thank you, Your Honor. We have not reserved time, but we'll now hear from the United States. May it please the Court. My name is Sebastian Sweat. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on appeal, and I also represented the United States at the district court proceedings. I'd like to first just briefly address the issue of burden shifting. I think that there are three reasons here that the — that the comment — that the comments that the government made and the questions that the government's asked about Odiase's videotaped statement were entirely permissible. First, as argued in the brief, the intent of these questions was — was not to attack a defense theory. It was merely to impeach the statement that she made at the time. Even if the defense had not put on any case, the government would have been entitled to prove that she had lied in that interview to show her consciousness of guilt. And so asking the police whether she provided information to them which she said would have corroborated her story about Frank and the sister was an entirely appropriate line of questioning. Regardless, this was, in fact, the defense theory. The defendant, at opening, pointed to the fact that that statement — that the statement to the police was, in fact, made in good faith, that she did, in fact, believe that the money had been received in exchange for sale. And because that was a defense theory, the government was able to attack it by pointing out the deficiencies in that argument. Now, the only — the only way in which that crosses the line is if the government points out weaknesses or points out — points to a lack of evidence that would require the defendant herself to take the stand. That certainly wasn't the case here. In fact, as Mr. Cohen, appellant counsel, points out, there was evidence that could have rebutted the government's argument. At the statement, at the time she met with the police, she gave them a shipping receipt. And then at trial, she called an individual, Mr. Adama Delamu, who testified that he had, in fact, shipped merchandise for her. So there was never any suggestion from the government at any point that the only way she could, in fact, prove her theory that the statement was true or at least made in good faith was by testifying. And so it was an entirely appropriate means of attacking the defense theory for the government to point to these deficiencies. And then third, any error, to the extent there was, was harmless. There were numerous instructions. How exactly did you point out the problem at trial? Your Honor, at no point did the government tell the jury, you have not seen evidence. In every instance, certainly none, no instance cited by appellant counsel. But it was a conscious decision to point out that there was no evidence provided to the police, which is an important distinction. Because ultimately the government's purpose was to impeach that statement. It could have also attacked the theory and it could have said to the jury, you have not seen evidence of shipping receipts, photographs, appraisal reports. But that was ultimately sort of a follow-on effect from the bigger question for the argument, for the government. I'd like to then go over the issue of concealment and respond to some of the questions that were raised during appellant's argument. So I think the fundamental problem here with appellant's argument is that he is construing the verdict in a light most favorable to the appellant. Essentially by arguing that an acquittal on count one exonerates Odiase of anything up until the point where she transfers the money from her Bank of America account to her Chase Bank account ignores a wealth of evidence about this scheme and about her role in it. This is not an instance in which the money just magically appeared in her account. After the victim was defrauded of over $300,000, that money moved through a series of coordinated and rapid transactions from a company called Aquatherm to Brittany Yearling who testified at trial. Some of that money went from Ms. Yearling to an account in China and some of it went to Ms. Odiase. And certainly when you look at the three money laundering offenses, one of them was a conspiracy. I mean, this is classic evidence of a conspiracy and certainly Odiase is at the end of that conspiracy. And in fact, an argument the government made at trial was it's relevant that she was the end. That rather than have the money hit her account and then immediately move to the next person down the line as you would expect for a mule with a minor role in the money laundering, it hits her account, it stays there for about a week and a half or two weeks, and then she personally goes to a bank, withdraws it, and moves it to another account. So what is the transaction, if any, that was in either the indictment or in the government's estimation specified as the transaction that was designed to conceal the source of the funds? The government argued and the government's view is that the transaction into her account, that is the deposit into her account from Brittany Yearling, was designed to conceal, that she knew about it as evidenced by her false exculpatory statement, and that her decision to transfer the money to herself was further intent to conceal. Okay. And the 1957 count, in any event, could perfectly well apply to the other transaction, her transfer as well, because that doesn't require concealment as a goal. Absolutely. Okay. But the 1956 count, the government is relying on the transfer into her account as a transaction in which she participated that was designed to conceal something about the transaction. For 1956, we rely on both. It's true that both accounts were in her name, but concealment does not just mean identity. It means source. It means ownership. It means nature, location. And, frankly, concealment doesn't necessarily mean successful concealment. Crozier is a case in which the defendant made transfers in his name and the Second Circuit held that that was sufficient evidence for concealment. But, frankly, either transaction would work for concealment. Could I ask a different question about an argument that was not made orally today but is in the appellant's brief, which is restitution? What evidence is there that supports a conclusion that Ms. Odiasi was aware that there was more money involved in this transaction? In other words, she got $50,000. Is there any evidence at all that she was aware that some other co-conspirator was laundering other parts of the illegal money, whether there was anybody else involved here at all except her son and the intermediary who transferred the money to her? But with respect to your specific question of knowledge of this particular transaction, the answer would be no. However, that's not true. But isn't that what the restitution is? The restitution is the total amount of the scam on the victim who was told that her son was in trouble and transferred the $300,000, right? Restitution is the total amount that the victim suffered based on a crime of deceit, which was the money laundering in this case. Second Circuit law holds that a defendant must be aware of the reasonably foreseeable acts. Yes. So is she – what makes it foreseeable to her that this was more than her son did some kind of scam that involved $50,000 and she was going to hold it for him and transfer it to him and hide it for him? What says that she knows anything beyond that? So the Bank of America account is opened on June 3rd in 2015. About 12 days later, I think June 15th, there is a deposit of about $35,000 into that account. That was in the trial record. And at sentencing, the government proffered without objection that agents had interviewed the individual who had made that deposit. And that woman told the agents that she was in a romantic relationship with Sylvester O'Donoghue. But that's another victim, and there's no restitution ordered to that victim. The issue here, it seems to me, is there's restitution of $300,000 awarded to the specific victim who was the grandmother, right? Well, if I – And I'm just trying to figure out what justifies imposing that burden that says that Ms. Odiasi had reason to believe that whatever scam it was, which the jury apparently concluded she did not know the specifics of this scam, whatever scam it was, was bigger than $50,000. So two responses to that. First, the language is that she needs to be aware of the reasonably foreseeable acts. Now, that doesn't mean necessarily that she knows the quantity. It doesn't necessarily mean that she knows – Were there any other acts besides a scam that elicited $50,000, which she was supposed to hide for her son or transfer to her son? And what I'm arguing is that the fact that she received another transaction into her account that fit this same pattern made her different from a sort of one- off mule who makes an account available, doesn't really know much else besides that. And the second point, which I think strengthens – But why does that make her responsible for a $500,000 or $300,000 scam rather than a $50,000 scam? Because the Victim Restitution Act is focused on the victim and weighs on making the victim whole. And in fact, it allows for recovery of all actions of co-conspirators so long as they're reasonably foreseeable. Yeah. So her involvement with her son in more than one scam – Just makes it foreseeable. That what he did in this instance went beyond the mere $50,000 that went into her account. Is it enough that she knows the scam is more than that $50,000, or do you have to show it was reasonably foreseeable that it would be the 3 – what is it, 329, whatever the number is? I see that my time has elapsed. May I answer the question? Thank you, Your Honors. It is simply the fact that there were additional acts. And I think that there's an important analogy here or contrast when you look at the guidelines. Just to be clear what you're saying. Once a person puts $50,000 in and it's foreseeable that that person knew the scam was more than that, that's enough to make them have to give restitution for the entire amount of the scam? That is what the Mandatory Victim Restitution Act provides for. I think when you compare that to the guidelines, which calculates reasonable – or which calculates loss based on a reasonably foreseeable pecuniary harm, you see the contrast. One is focused on the amount, you know, sort of the dollars and cents at the end of the day. The other one is focused on the acts. And I think that that is appropriate given that restitution ultimately recognizes that there is a person who is out a large sum of money and that the court should be – should have discretion to fashion that award. So long as the defendant knew that this scheme was bigger than the solitary act that she was involved in, then yes, a consequence of that is that a restitution. So at that point, what needs to be foreseeable is that those losses would be caused by the scheme, not that she knew how extensive the losses were? Exactly. And just in – there was ample trial evidence as well demonstrating that Odiase was more than a mule. The fact that she opened these accounts, the fact that she persisted in a false exculpatory statement, compared to Brittany Yearling, who used a business account, Odiase took deliberate steps. And that also demonstrates that she was more than just someone who made an account available for a single transaction with no greater knowledge. Thank you very much. We'll reserve the decision and we are adjourned. Court is adjourned. Thank you.